UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GERARD M. PENNEY, et al., | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil Action No. 16-cv-10482-ADB |
| | * | |
| DEUTSCHE BANK NATIONAL TRUST | * | |
| COMPANY, et al., | * | |
| | * | |
| Defendants | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiffs Gerard and Donna Penney (individually, "Gerard" and "Donna," and collectively, "Plaintiffs") filed suit against Deutsche Bank National Trust Company (the "Bank"), in its capacity as the trustee for the certificate holders of a mortgage-backed securities trust that holds the mortgage to the Plaintiffs' home located at 34 Anchor Drive, Sandwich, Massachusetts (the "Property"), and Ocwen Loan Servicing, LLC ("Ocwen"), the servicer of the loan for the Plaintiff's home (collectively, the "Defendants"). This suit arises out of the threatened foreclosure of the Property.

Now pending before this Court is the Defendants' Motion to Dismiss for failure to state a claim [ECF No. 26], the Defendants' Motion to Strike Gerard's affidavit and exhibits attached to Plaintiffs' opposition to the motion to dismiss [ECF No. 33], and the Plaintiffs' request for a preliminary injunction, made in the Amended Complaint [ECF No. 21 at ¶ 83(i)]. For the reasons discussed below, the Court <u>GRANTS in part and DENIES in part</u> the Defendants' motion to strike and Defendants' motion to dismiss, and <u>DENIES</u> the Plaintiffs' request for a preliminary injunction.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from Plaintiffs' Amended Complaint [ECF No. 21 (hereinafter, the "Complaint")] and supplemented by materials incorporated into the Complaint. See Rodi v. S. New England Sch. of L., 389 F.3d 5, 12 (1st Cir. 2004). The Plaintiffs are a married couple living in Sandwich, Massachusetts. Complaint at ¶¶ 1–2. On or about April 7, 1997, Donna and Gerard received the Property as grantees by a quitclaim deed and took title as tenants by the entirety. Id. at ¶ 5. On or about August 27, 2003, a Durable Power of Attorney was recorded in the Barnstable County Registry of Deeds, appointing Gerard as Donna's attorney-in-fact. Id. at ¶ 6. On or about July 25, 2005, Gerard executed an "Adjustable Rate Note," (the "Note") with a "Balloon Note Addendum" (the "Addendum") with H&R Block Mortgage Corporation as the lender. Id. at ¶ 8. This Note was for a 30-year, $405,000 loan, which would reach maturity in August 2035. Id.; [ECF No. 27-1 at 2]. Gerard simultaneously executed a Mortgage on the Property as security for the Note.[1] Complaint at ¶ 12. It is not apparent from the pleadings why Gerard obtained this loan.

Gerard signed the Mortgage on behalf of Donna, including an annotation that the execution on her behalf was pursuant to a Power of Attorney dated March 20, 2003. Id. at ¶¶ 12–15; see also [ECF No. 27-2 at 11]. Donna did not personally sign either the Note or the Mortgage, and was not involved in the application process for the loan. Id. at ¶¶ 14, 15. Plaintiffs allege that Gerard was told he had to sign Donna's name on the Mortgage to receive the loan. Id. at ¶ 15. The Plaintiffs further allege that there was no Power of Attorney dated March 20, 2003,

---

[1] The Mortgage itself is attached as an exhibit to the Defendants' motion to dismiss. [ECF No. 27-2]. As is discussed below, the Court may consider this document when evaluating a motion to dismiss under Rule 12(b)(6), even though it is not attached to the Complaint itself, because its authenticity is undisputed, it is central to Plaintiffs' claims, and it is sufficiently referred to in the Complaint. See Gilmore v. Citigroup, Inc. (In re Citigroup, Inc.), 535 F.3d 45, 52 (1st Cir. 2008).

but state that a Durable Power of Attorney was recorded on August 27, 2003. Complaint at ¶¶ 6–7. On or about October 6, 2006, Gerard executed a "Declaration of Homestead" for the Property in his sole capacity and recorded it in the Barnstable County Registry of Deeds. Id. at ¶ 16.[2]

In May 2011, Donna was declared disabled. Id. at ¶¶ 6, 12. That same year, Gerard faced financial difficulties and fell behind on the mortgage payments. Id. at ¶ 17. The servicer on the loan, which the Court infers to be Ocwen, informed Gerard that he needed to apply for a loan modification under "the settlement relating to the Massachusetts Attorney General and that his loan would be included in the settlement." Id. at ¶ 18. Gerard applied for a loan modification. Id. The Bank commenced foreclosure proceedings on October 16, 2012, and scheduled a foreclosure sale for November 14, 2012. Id. at ¶ 19. It is not clear what happened on that foreclosure sale date, although there is no indication that the Plaintiffs were foreclosed upon or lost their home. On September 3, 2013, Ocwen offered Gerard a loan modification. Id. at ¶ 20. Gerard responded that he could not make the loan payments under the offered modification because the monthly payment amount would equal his entire monthly income. Id. Ocwen agreed to reconsider the loan modification if Gerard submitted an updated income statement. Id. at ¶ 21. Gerard submitted the required paperwork. Id. On August 14, 2014, Ocwen wrote to Gerard that he had been denied a modification of his loan for failing to submit documentation in a timely manner. Id. at ¶ 22. The Plaintiffs allege that Ocwen represented to Gerard that he would be approved for a loan modification. Id. at ¶ 26. On February 12, 2016, the Bank's attorneys wrote to the

---

[2] Under Massachusetts law, a homeowner may formally declare their home to be a "homestead," which, subject to numerous exceptions, exempts the property "from the laws of conveyance, descent, devise, attachment, seizure, execution on judgment, levy and sale for payment of debts or legacies." Mass. Gen. Laws ch. 188, § 3(b). Two such exceptions are that the homestead declaration cannot impede "a lien on the home recorded prior to the creation of the estate of homestead" or "a mortgage on the home." Id. at §§ 3(b)(2) and 3(b)(3). The Mortgage predates the declaration of homestead. Complaint at ¶¶ 8, 16.

Plaintiffs informing them that it intended to put the Property up for auction on March 9, 2016 at

2:00 PM. [ECF No. 13 at 20]. It is not clear what happened on that date, although it appears from

the most recently amended complaint, filed on June 16, 2016, that the Plaintiffs had not been

foreclosed on as of that date.

On March 2, 2016, Gerard and Donna filed suit in the Barnstable County Superior Court

in Massachusetts against the Bank. [ECF No. 13 at 18].[3] They simultaneously filed a motion for

a temporary restraining order and preliminary injunction to stop the imminent foreclosure of the

Property. [ECF Nos. 1-3 at 5, 13 at 15, 20]. The hearing in state court on the motion for a

temporary restraining order or preliminary injunction was scheduled for March 8, 2016. [ECF

No. 13 at 13–14]. On March 8, 2016, the Bank removed the case from state court to this Court.

Id. at 24. Plaintiffs filed an amended complaint on June 16, 2016. [ECF No. 21]. This Complaint

includes a request for a temporary restraining order or preliminary injunction. Id. at ¶ 83(i). On

July 18, 2016, the Defendants filed a motion to dismiss all counts in the Complaint for failure to

state a claim [ECF No. 26], which the Plaintiffs opposed [ECF No. 31]. In support of their

opposition to the motion to dismiss, the Plaintiffs also filed an affidavit from Gerard and copies

of mortgage-related documents. [ECF Nos. 32, 32-1, 32-2]. On August 10, 2016, the Defendants

filed a motion to strike the affidavit and mortgage-related documents [ECF No. 33], which the

Plaintiffs opposed [ECF No. 37].

---

[3] The Court may consider the certified copy of the record from Barnstable County Superior Court [ECF No. 13], where this suit began, without converting this motion to dismiss into a motion for summary judgment. See Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008) (courts may consider state court records when deciding a motion to dismiss because they are public record); see also Xiao Wei Yang Catering Linkage in Inner Mong. Co., LTD. v. Inner Mong. Xiao Wei Yang USA, Inc., 150 F. Supp. 3d 71, 76 (D. Mass. 2015) (same).

In their Complaint, the Plaintiffs allege the following causes of action: Declaratory Judgment on numerous grounds (Count I); breach of contract (Count II); breach of the implied covenant of good faith and fair dealing (Count III); negligent and intentional infliction of emotional distress (Count IV); violation of federal and state debt collection practice laws (Count V); common law recoupment (Count VI); and recoupment and adjustment of the loan for the Property pursuant to Massachusetts General Laws chapter 140D (Count VII). [ECF No. 21]. The Defendants' motion to dismiss seeks dismissal of all seven counts. [ECF No. 26].

## II. LEGAL STANDARD

To evaluate a complaint in the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the Court first "disregard[s] statements in the complaint that merely offer 'legal conclusion[s] couched as . . . fact[ ]' or 'threadbare recitals of the elements of a cause of action.'" Rodriguez-Ramos v. Hernandez-Gregorat, 685 F.3d 34, 40 (1st Cir. 2012) (quoting Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011)). Then, all "remaining, non-conclusory allegations are entitled to a presumption of truth, and we draw all reasonable inferences therefrom in the pleader's favor." Id. The "make-or-break standard" in evaluating the complaint "is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." Id. (quoting Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010)).

In deciding a Rule 12(b)(6) motion, a court is ordinarily limited to "the allegations contained within the four corners of the plaintiff's complaint." Young v. Lepone, 305 F.3d 1, 10–11 (1st Cir. 2002). A court may, however, consider documents "outside of the pleadings where they are undisputed, central to plaintiffs' claims, and sufficiently referred to in the complaint or incorporated into the movant's pleadings." Gilmore, 535 F.3d at 52; see also Young, 305 F.3d

at 11. "When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998); see also Claudio-de León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 46 (1st Cir. 2014); Carrero-Ojeda v. Autoridad De Energía Eléctrica, 755 F.3d 711, 716–17 (1st Cir. 2014). The Mortgage, Note, and Addendum are central to the Plaintiffs' claims and referred to in the Complaint. There is no dispute as to the authenticity of the copies of the Mortgage, Note, and Addendum attached to the Defendants' motion to dismiss. Therefore, the Court may refer to the Mortgage, Note, and Addendum when ruling on the Defendants' motion to dismiss.

## III. DISCUSSION

### a. The Defendants' Motion to Strike

The Defendants moved to strike [ECF No. 33] the affidavit written by Gerard and accompanying exhibits pertaining to the mortgage of the Property that were filed with the Plaintiffs' opposition to the motion to dismiss [ECF Nos. 32, 32-1, 32-2]. The Defendants argue that the affidavit amends the Complaint without complying with Federal Rule of Civil Procedure 15(a) ("Rule 15(a)"). In opposition to the motion to strike, the Plaintiffs argue that the motion should be summarily dismissed for failure to comply with the local rules and that the affidavit should not be dismissed because it only clarifies the pleadings.

Although the Court may use certain documents to supplement the factual allegations of the complaint on a motion to dismiss, see Butler v. Balolia, 736 F.3d 609, 611 (1st Cir. 2013), Gerard's affidavit does not fall within this narrow category of documents. See U.S. Bank Nat'l Ass'n v. James, No. 09-89-P-S, 2009 WL 2448578, at *3–4 (D. Me. Aug. 9, 2009) (striking

affidavit attached to opposition to motion to dismiss because it was not a document the court could review at that stage of the case). Rather, Gerard's affidavit touches on many of the allegations from the Complaint and effectively functions as an amendment to the Complaint. Rule 15(a) lays out the procedure a party must follow to amend a complaint before trial. It states that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Plaintiffs have obtained neither the opposing party's written consent nor this Court's leave. Accordingly, the Defendants' motion to strike is granted as to the affidavit.[4]

The Court will not, however, strike Exhibit B attached to the affidavit. Exhibit B contains documents relating to the Mortgage that were already filed by the Defendants as exhibits to their motion to dismiss. Compare [ECF Nos. 27-1, 27-2] with [ECF Nos. 32-2]. Exhibit A will be struck because it was not referred to in the Complaint and is not susceptible to judicial notice. Accordingly, the Defendants' motion to strike is denied as it pertains to Exhibit B, but granted as to Exhibit A.

---

[4] The Plaintiffs also argue that Defendants' motion to strike and motion to dismiss should be denied because the Defendants did not comply with Local Rule 7.1(a)(2), which requires the lawyers for the parties to confer before either side files an adversary motion. See [ECF Nos. 33, 37]; LR, D. Mass. 7.1(a)(2). While "a litigant's failure to observe the Local Rules invites sanctions, omitting to confer prior to filing a motion certain to be opposed does not warrant so severe a sanction as summary denial." Converse, Inc. v. Reebok Int'l Ltd., 328 F. Supp. 2d 166, 174 n.7 (D. Mass. 2004). "In most cases . . . the appropriate remedy for a violation of Rule 7.1 is not to strike the motion; it is the assessment of sanctions under Fed. R. Civ. P. 11." Robinson v. Mass. Dep't of Unemp't Assistance, No. 14-cv-13613-ADB, 2016 U.S. Dist. Lexis 139172, at *6 (D. Mass. Oct. 6, 2016). The motion to strike was certain to be opposed, as indeed it was, so summary denial is not the appropriate sanction. Instead, the Court may consider sanctions under Federal Rule of Civil Procedure 11. This analysis applies with equal force to the Defendants' motion to dismiss, which was also filed without the requisite conference with Plaintiffs' counsel. See [ECF Nos. 26, 31 at 3]. The Court warns the Defendants that it must comply with the Local Rules or risk sanctions.

### b.  Count II (Breach of Contract)

Plaintiffs argue two theories of breach of contract: first, that the Defendants breached the

contract memorialized by the Note and Addendum, and second, that they also breached

agreements made during the loan modification negotiations. Complaint at ¶¶ 42–44. Specifically,

Plaintiffs allege that "the addendum and the Note taken together did create a right for Gerard

Penney to pay the loan in full on the maturity date, or in the alternative for the twelve months

preceding the maturity date and the actions of the Bank and its agent's breached this right." Id. at

¶ 43. The Plaintiffs also argue that Ocwen breached agreements it reached with Gerard during

the loan modification process. Id. at ¶ 44. The Defendants assert that the Plaintiffs do not

properly allege the existence of a contract that allows them to default and remain in default until

maturity or one that entitles them to a loan modification. [ECF No. 27 at 7–8].

Plaintiffs do not dispute that Massachusetts law governs the construction of the contracts

in this case. See Wilson v. HSBC Mortg. Servs., 744 F.3d 1, 5 (1st Cir. 2014) (applying

Massachusetts law when parties did not dispute that "Massachusetts law applies to all

substantive issues in th[e] case"); [ECF No. 27-2 at 5]. "In order to state a viable breach of

contract claim under Massachusetts law, plaintiffs must prove that [1] a valid, binding contract

existed, [2] the defendant breached the terms of the contract, and [3] the plaintiffs sustained

damages as a result of the breach." Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579,

586 (1st Cir. 2007); see also Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 39 (Mass. 2016).

Courts may examine a contract's terms at the motion to dismiss stage to determine if the

plain terms of the contract contradict a plaintiff's allegations. See Young v. Wells Fargo Bank,

N.A., 717 F.3d 224, 232 (1st Cir. 2013) (examining contract's plain terms to determine that

plaintiff failed to state a breach of contract claim based on the particular theory advanced); see

also Clark v. Janssen Pharms., Inc., 606 F. App'x 592, 594 (1st Cir. 2015) (affirming district

court's dismissal of a contract suit pursuant to Rule 12(b)(6) when the plain terms of the contract

undermined the plaintiff's cause of action); Amerifirst Bank v. TJX Cos. Inc. (In re TJX Cos.

Retail Sec. Breach Litig.), 564 F.3d 489, 499–500 (1st Cir. 2009) (same); Henning v. Wachovia

Mortg., FSB, 969 F. Supp. 2d 135, 147 (D. Mass. 2013) (reasoning that "[w]hen such documents

[mortgage and note] contradict allegations in the complaint, the documents trump the

allegations," and dismissing breach of contract claim where allegation was "flatly contradicted

by the terms of the mortgage and note"); Suthers v. Amgen, Inc., 441 F. Supp. 2d 478, 484

(S.D.N.Y. 2006).

    i.   The breach of contract claim based on the loan documents

Plaintiffs first argue that they had a right to remain in default without the threat of

foreclosure until the maturity date, or, alternatively, until twelve months preceding the maturity

date. The plain terms of the Note, Addendum, and Mortgage make clear that Plaintiffs did not

have a right to fail to make monthly payment on the loan until the maturity date or until twelve

months before. The Note requires the Plaintiffs to "pay principal and interest by making

payments every month." [ECF No. 27-1 at 2]. The Note also specifies that the borrower "will

make these payments every month, in addition to a final Balloon Payment payable at Maturity as

referenced in the attached Balloon Note Addendum, until [he] ha[s] paid all of the principal and

interest and any other charges described below that [he] may owe under this Note." Id. at ¶ 3.

The Note further states that "[i]f [the borrower] do[es] not pay the full amount of each monthly

payment on the date it is due, [he] will be in default." Id. at ¶ 7. The Mortgage secures the debt

evidenced in the Note, allowing foreclosure if the borrower defaulted. See [ECF No. 27-2 at ¶

21]. The Mortgage also states that "Borrower shall promptly pay when due the principal of and

interest on the debt evidenced by the Note and any prepayment and late charges due under the Note." [ECF No. 27-2 at ¶ 1]. The Plaintiffs' reference to the portion of the Note that reads that "this loan is payable in full at maturity" does not alter the clear requirements that the borrower make monthly payments on the principal. Thus, the Note and Mortgage plainly require payment *by* the maturity date via *monthly* payments and the final balloon payment, not merely payment *on* the maturity date. Finally, the conditional right to refinance described in the Addendum is determined at the Maturity Date and is explicitly conditional upon, among other things, the borrower being "current on [his] monthly payments." [ECF No. 27-1 at 5]. The Plaintiffs do not argue that there is some other contract or any implied terms that could plausibly give rise to the alleged right that directly contradicts the plain terms of the Note, Addendum, and Mortgage.

Furthermore, on the plain terms of the Note, there is no right to repay the loan within the twelve months preceding August 1, 2035. The only mention of that time period is in the Addendum, which states that one of the conditions for a new loan from the same lender upon maturity is that the Plaintiffs not be thirty days or more late on any monthly payments in the twelve months leading up to August 1, 2035. Id. at 5. Thus, it is one of the prerequisites before the conditional right to refinance is triggered, but does not create a right to not make any payments until the year leading up to the maturity date. Accordingly, because Plaintiffs' breach of contract claim against the Bank is contradicted by the express terms of the Note, Addendum, and Mortgage, Count II fails to state a breach of contract claim based on the theory that the loan documents created a right for the Plaintiffs to remain in default until the Maturity Date. See Amerifirst Bank, 564 F.3d at 499 (affirming dismissal of a breach of contract claim when the contract at issue explicitly undermined the cause of action).

ii.   The breach of contract claim based on the loan modification negotiations

Plaintiffs next allege that Gerard and Ocwen formed a contract to modify the loan to reflect Gerard's income and preserve his ownership of the Property and that Ocwen then breached the contract, resulting in the Bank initiating foreclosure proceedings. Complaint at ¶ 44. Defendants argue that no such agreement to modify the loan existed and is not sufficiently alleged.

To prevail on a breach of contract claim under Massachusetts law, "a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." Bulwer, 46 N.E.3d at 39. "Contract formation requires a bargain in which there is a manifestation of mutual assent to the exchange." I & R Mech., Inc. v. Hazelton Mfg. Co., 817 N.E.2d 799, 802 (Mass. App. Ct. 2004). During negotiations, "[a] substantial variation in contract terms incident to a purported acceptance is not a binding acceptance but a counter offer," Mass. Hous. Fin. Agency v. Whitney House Assocs., 638 N.E. 2d 1378, 1380–81 (Mass. 1994), while a "comment, purported clarification, or expression of dissatisfaction appended to an endorsement of acceptance" is considered a full acceptance. Id. at 1381.

Plaintiffs allege that in 2011, Ocwen informed Gerard that he needed to apply for a loan modification. Although Gerard applied for the loan modification, the Bank nonetheless commenced foreclosure proceedings on October 16, 2012. Complaint at ¶¶ 18–19. On September 3, 2013 Ocwen offered Gerard "a loan modification with a payment amount of $2607.25" per month. Id. at ¶ 20. Plaintiffs further allege that "Gerard contacted Ocwen and informed Ocwen that he accepted the modification but that there must be a mistake as he could not afford the

monthly payment which was 100% of his monthly income." Id. Ocwen agreed to reconsider the loan modification and "instructed him to submit an updated income statement that would modify the monthly amount due." Id. at ¶ 21. "Gerard submitted the required paperwork and agreed to this modification of the accepted agreement." Id. On August 14, 2014, Ocwen sent Gerard a letter "stating that he had been denied a modification for failing to submit timely documentation despite the fact that he had submitted the documentation as requested prior by Ocwen." Id. at ¶ 22.

Even construing these facts in the light most favorable to Plaintiffs, they have not sufficiently alleged the existence of a contract between them and Ocwen to modify the loan. Although Ocwen made an offer to modify the loan with a certain monthly payment amount, Gerard rejected the offer when he declined to pay the specified amount. His subsequent request to pay a lower monthly payment constituted a counteroffer. See Mass. Hous. Fin. Agency, 638 N.E. 2d at 1380–81. "A notice of acceptance that is in any respect conditional . . . is not an operative notice of acceptance." Christian v. Edelin, 843 N.E.2d 1112, 1115 (Mass. App. Ct. 2006) (quoting 3 Corbin on Contracts § 11.8, at 529–30 (rev. ed. 1996)); see also Moss v. Old Colony Trust Co., 140 N.E. 803, 806 (Mass. 1923) ("[A] conditional acceptance or one that varies from the offer in any substantial respect is in effect a rejection and is the equivalent of a new proposition."). Ocwen did not accept Gerard's counteroffer, and there was therefore no contract between Ocwen and the Plaintiffs. Cf. Eisenberg v. Ocwen Loan Servicing, LLC, 2010 U.S. Dist. Lexis 119553, at *8–9 (D. Md. Nov. 10, 2010) (granting summary judgment to Ocwen on a contract claims based on a loan modification agreement and holding the plaintiff merely made a counteroffer to Ocwen when he signed a copy of the agreement after crossing out

sections relating to fees he had to pay). Accordingly, Count II, based on the loan modification

negotiations, fails to state a claim for which relief can be granted, and is therefore dismissed.

### c. Count III (Breach of the Implied Covenant of Good Faith and Fair Dealing)

In Count III, the Plaintiffs assert that the Defendants breached the implied covenant of

good faith and fair dealing by using their "superior power . . . [to] threaten and destroy the

plaintiff's rights under the agreements" between the parties. Complaint at ¶ 54. The Plaintiffs do

not specify against which defendant Count III is alleged. The Court interprets Count III as

against both Defendants.

In Massachusetts, "[e]very contract implies good faith and fair dealing between the

parties to it." Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991)

(quoting Warner Ins. Co. v. Comm'r of Ins., 548 N.E.2d 188, 192 n.9 (Mass. 1990)). "The

covenant of good faith and fair dealing provides that 'neither party shall do anything that will

have the effect of destroying or injuring the right of the other party to the fruits of the contract.'"

T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 924 N.E.2d 696, 704 (Mass. 2010) (quoting Anthony's

Pier Four, Inc., 583 N.E.2d at 806). The "scope of the covenant is only as broad as the contract

that governs the particular relationship." Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d 667,

684 (Mass. 2005). Claims of breach of the implied covenant of good faith and fair dealing also

require "conduct taken in bad faith either to deprive a party of the fruits of labor already

substantially earned or unfair leveraging of the contract terms to secure undue economic

advantage." Christensen v. Kingston Sch. Comm., 360 F. Supp. 2d 212, 226 (D. Mass. 2005).

Here, Plaintiffs have failed to sufficiently allege what conduct Defendants engaged in to

breach the implied covenant and what contract underlies the claim. To the extent Plaintiffs rely

on the same conduct that underlies the breach of contract claim in Count II, Count III fails

because, as explained above, Plaintiffs have not adequately alleged a breach of contract. See Ayash, 822 N.E.2d at 684; McCusker v. Ocwen Loan Servs., LLC, No. 14-cv-13663, 2015 WL 4529986, at *6 (D. Mass. July 27, 2015) (holding that Ocwen cannot breach the implied covenant of good faith and fair dealing with regard to a mortgage because it is not a party to the mortgage). Accordingly, Count III is dismissed.

### d. Count IV (Negligent and/or Intentional Infliction of Emotional Distress)

The Plaintiffs allege both negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED"). They argue that Defendants had an affirmative duty under state and federal law "to take certain actions" and willfully breached this duty. Complaint at ¶¶ 59–60. Defendants argue that this count should be dismissed because Plaintiffs have failed to plead a plausible claim for either IIED or NIED. Under Massachusetts law, to successfully plead NIED, a plaintiff must allege the following elements: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Payton v. Abbott Labs, 437 N.E.2d 171, 181 (Mass. 1982); see also Gutierrez v. Mass. Bay Transp. Auth., 772 N.E.2d 552, 566 (Mass. 2002). The first element of NIED, negligence, requires that the Defendants owe a duty to the Plaintiffs. See Jupin v. Kask, 849 N.E.2d 829, 834–35 (Mass. 2006).

Here, the Plaintiffs do not plausibly plead that the Defendants owed them a duty of care. They allege that "Defendants were under an affirmative duty pursuant to State and Federal law, rule, and regulation [sic] and by contract to take certain actions." Complaint at ¶ 59. However, "[t]he relationship between a borrower and lender does not give rise to a duty of care under Massachusetts law." MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 495 (1st Cir. 2013).

Further, "statutory or regulatory violations cannot give rise to a negligence claim when there is

no independent duty of care between the parties," although such violations may be evidence of a

*breach* of a duty. Id. at 495. Thus, any theory of negligence based solely on a violation of a

statute, rule, or regulation—without an independent duty—fails under Massachusetts law.

Further, under Massachusetts law, a contract does not create a duty of care for the

purposes of tort law. Doe v. Tr. of B.C., No. 15-cv-10790, 2016 WL 5799297, at *27 (D. Mass.

Oct. 4, 2016) ("tort obligations 'are imposed by law, independent of the promises' of contractual

duties" (quoting Treadwell v. John Hancock Mut. Life Ins. Co., 666 F. Supp. 278, 289 (D. Mass.

1987)). "[I]f the alleged obligation to do or not to do something that was breached could not have

existed but for a manifested intent, then contract law should be the *only* theory upon which

liability would be imposed." Treadwell, 666 F. Supp. at 289 (quoting W. Prosser & W.

Keeton, Torts § 92, at 655 (5th ed. 1984)); see also Anthony's Pier Four, Inc. v. Crandall Dry

Dock Engineers, Inc., 489 N.E.2d 172, 175 (Mass. 1986). Accordingly, the NIED claim is

dismissed.

Plaintiffs also allege that the Defendants intentionally inflicted emotional distress upon

them. In order to successfully plead IIED under Massachusetts law, a plaintiff must allege:

> (1) that the actor intended to inflict emotional distress or that he
> knew or should have known that emotional distress was the likely
> result of his conduct; (2) that the conduct was "extreme and
> outrageous," was "beyond all possible bounds of decency" and was
> "utterly intolerable in a civilized community," (3) that the actions of
> the defendant were the cause of the plaintiff's distress; and (4) that
> the emotional distress sustained by the plaintiff was "severe" and of
> a nature "that no reasonable man [or woman] could be expected to
> endure it."

Agis v. Howard Johnson Co., 355 N.E.2d 315, 318–19 (Mass. 1976) (internal citations omitted);

see also Roman v. Trustees of Tufts College, 964 N.E.2d 331, 341 (Mass. 2012). "Liability has

been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts, § 46 cmt. d.[5]

The Plaintiffs have not sufficiently pleaded any of the elements of IIED. The Complaint contains no allegations that permit the inference that either the Bank or Ocwen acted with intent to inflict emotional distress, no allegations plausibly establishing "extreme and outrageous" conduct, and no allegations showing a causal link between any intentional actions of the Defendants and the Plaintiffs' emotional distress. Further, being "emotionally devastated" by problems associated with foreclosure of one's home does not sufficiently support a showing of extreme and outrageous conduct. Young, 717 F.3d at 240; see also McCusker, 2015 WL 4529986, at *7 ("Courts applying Massachusetts law have consistently dismissed IIED claims when defendants communicate with plaintiffs regarding foreclosure and/or loan modification because this behavior does not rise to the level of 'extreme and outrageous.'"). Accordingly, Count IV is dismissed.

### e.   Count V (Violations of State and Federal Debt Collection Practice Laws)

In Count V, the Plaintiffs allege that the Defendants violated state and federal debt collection practice laws, but do not cite to any specific statutes, rules, or regulations regarding debt collection practices. Count V cites only "G.L. 244 and G.L. 183," Complaint at ¶ 66, which the Court interprets to refer to Massachusetts General Laws chapters 244 (entitled "Foreclosure and Redemption of Mortgages") and 183 (entitled "Alienation of Land"). In addressing Count V in their opposition to the motion to dismiss, Plaintiffs cite to Massachusetts General Laws

---

[5] When discussing IIED, Massachusetts courts routinely cite the Restatement (Second) of Torts, § 46. See, e.g., Agis, 355 N.E.2d at 318–19; Foley v. Polaroid Corp., 508 N.E.2d 72, 82 (Mass. 1987).

chapter 244, § 35A(h),[6] § 35B, and 15 U.S.C. § 1692k. [ECF No. 31 at 11, 12, 16]. Defendants argue that Count V should be dismissed because Plaintiffs fail to specify what debt collection laws Defendants violated, there are no allegations to support these claims, and the damages alleged are too speculative.

Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)(2)") requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of a clear and succinct pleading is to give a defendant fair notice of the claim and its basis, and to provide an opportunity for a cogent answer and defense. See Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008); Ocasio-Hernandez, 640 F.3d at 8 (explaining that, following Twombly, "the propriety of dismissal under Rule 12(b)(6) turns on the complaint's compliance with Rule 8(a)(2)"). Courts have dismissed complaints that allege a violation of a statute but that failed to adequately specify what parts of the statute a defendant violated. See, e.g., Bielma v. Bostic, No. 15cv1606-MMA, 2016 U.S. Dist. LEXIS 152, at *43 (S.D. Cal. Jan. 4, 2016) (holding that a count in a complaint that cited to an entire chapter of the California Government Code was insufficient under Rule 8); Lopez v. Chase Bank USA, N.A., No. 8:13–CV–1895–T–17MAP, 2014 WL 690282, at *1 (M.D. Fla. Feb. 20, 2014) (holding that a count in a complaint that cited to an entire chapter of the Florida Statutes was insufficient under Rule 8).

Sections 35A(h) and 35B are lengthy, and the Court "cannot readily discern from the pleadings which violation [the Plaintiffs] intended to allege." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 78–79 (1st Cir. 2014) (addressing a similar pleading problem in a §§ 35A and 35B

---

[6] Effective January 1, 2016, the Massachusetts General Court amended Massachusetts General Laws chapter 244, § 35A. 2010 Mass. Legis. Serv. Ch. 258 (S.B. 2407) (West). This amendment included removal of § 35A(h). The provisions of the old § 35A(h) were shifted to the current § 35A(c).

case). In their opposition, Plaintiffs simply state the conclusion that Defendants disregarded all of §§ 35A(h) and 35B without any supporting factual allegations. Therefore, Plaintiffs fail to allege sufficient facts regarding how Defendants' conduct violated state law.

The Plaintiffs' citation to 15 U.S.C. § 1692k is also unavailing. Section 1692k creates a private cause of action for any violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(a), but the violations of the FDCPA that can be sued for are contained in other sections of the FDCPA. Plaintiffs do not identify which provisions of the FDCPA the Defendants failed to comply with. See Tourgeman v. Collins Fin. Servs., 755 F.3d 1109, 1117 (9th Cir. 2014) (illustrating that § 1692(k) creates the private cause of action for violations of substantive provisions of the FDCPA contained in other sections). Accordingly, Count V is dismissed.

### f.   Count VI (Common Law Recoupment)

In Count VI, the Plaintiffs claim the right to "common law recoupment" with regard to their mortgage. In Massachusetts, common law recoupment is the right of "a defendant, facing suit for nonpayment on a contract, to assert defensively within the same action a claim for damages due to the plaintiff's own nonperformance of the same contract." May v. SunTrust Mortg., Inc., 7 N.E.3d 1036, 1041–42 (Mass. 2014). A defense of recoupment credits the obligations of a plaintiff against those of the defendant to extinguish the plaintiff's claim. Id.; DiVittorio v. HSBC Bank USA, NA (In re DiVittorio), 670 F.3d 273, 289 (1st Cir. 2012). Recoupment at common law was "a defendant's claim" that could "reduce or extinguish the plaintiff's claim, but it could not result in an affirmative recovery for the defendant." May, 7 N.E.3d at 1041 (quoting Bose Corp. v. Consumers Union of U.S., Inc., 326 N.E.2d 8, 10 (Mass. 1975)). Plaintiffs merely state in conclusory fashion that they assert recoupment as a *defensive*

*cause of action*, but fail to argue that they may properly do so in this proceeding. The First

Circuit has indicated that non-judicial foreclosure proceedings, which appear to be at issue here,

are likely not actions to which an individual may raise a right in recoupment. See In re

DiVittorio, 670 F.3d at 290 n.12 (citing Kelly v. Deutsche Bank Nat'l Trust Co., 789 F.Supp.2d

262, 266–67 & n.6 (D. Mass. 2011) and Ortiz v. Accredited Home Lenders, Inc., 639 F.Supp.2d

1159, 1164–65 (S.D. Cal. 2009)). Therefore, Count VI is dismissed.

### g.  Count VII (Recoupment and Adjustment of the loan pursuant to G.L. 140D)

In Count VII, the Plaintiffs request "an adjustment of the loan pursuant to G.L. 140D"

based on their "right to rescind" the Mortgage. Complaint at ¶¶ 79–78. A claim for rescission

under chapter 140D is governed by the statute of limitations in § 10(f), which states, "an

obligor's right of rescission shall expire four years after the date of consummation of the

transaction or upon the sale of the property, whichever occurs first." Mass. Gen. Laws ch. 140D,

§ 10(f). Here, the deadline to a claim for rescission under chapter 140D was July 25, 2009, four

years after the execution of the Mortgage and the Note. See Complaint at ¶¶ 8, 12. Since

Plaintiffs filed on March 2, 2016, their claim for rescission under chapter 140D is barred by

§ 10(f). Accordingly, Count VII is dismissed.

### h.  Count VIII (Violation of Massachusetts General Laws chapters 244 and 183)

Plaintiffs allege that the "defendants or its [sic] agents have caused to be filed documents

which would be in violation of G.L. 244 and 183." Id. at ¶ 82. There are around one hundred and

ten sections contained in Massachusetts General Laws chapters 244 and 183. The Plaintiffs do

not cite to any specific section in those chapters as the basis for their claim or identify what

actions the Defendants undertook that violated those provisions. Neither the Court nor

Defendants can be expected to guess what specific provisions Defendants have allegedly violated

and by what actions. See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 78–79 (1st Cir. 2014).

Thus, Count VIII is dismissed.

### i. Count I (Multiple Requests for Declaratory Judgment)

In Count I, the Plaintiffs make several requests for declaratory judgment, including that

the Mortgage is unenforceable against Donna and thus no foreclosure of the Property can go

forward. Although the focus of Count I seems to be Donna's rights, the Plaintiffs also request

declaratory judgment on several issues related to Gerard. Defendants argue that the request for

declaratory judgment relief should be dismissed because the Complaint does not support a

finding that the Mortgage is unenforceable against Donna or that, in the alternative, any alleged

defect in the Mortgage has been cured automatically under Massachusetts law because of the

passage of time.

Under the Declaratory Judgment Act, 28 U.S.C. § 2201–2202 ("DJA"), the Court has

"substantial discretion in deciding whether to declare the rights of litigants." MedImmune, Inc. v.

Genentech, Inc., 549 U.S. 118, 136 (2007); see also El Dia, Inc. v. Hernandez Colon, 963 F.2d

488, 493 (1st Cir. 1992). Requests for declaratory judgment are analyzed under the same Rule

12(b)(6) standard as all other counts in a complaint. See Cardigan Mountain Sch. v. N.H. Ins.

Co., 787 F.3d 82, 87 (1st Cir. 2015) (applying Twombly and Iqbal to declaratory judgment

action); see also Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 34 (1st

Cir. 2001) (evaluating requests for declaratory judgment under Rule 12(b)(6)). Requests for

declaratory judgment must plead sufficient facts showing the existence of rights to be clarified

by declaratory judgment. See, e.g., Wilmot v. Tracey, 938 F. Supp. 2d 116, 150 (D. Mass. 2013)

(dismissing a request for declaratory relief in a § 1983 suit because the plaintiff failed to allege

the unconstitutional policy and constitutional harm needed to support his claim); Tocci Bldg.

Corp. of N.J., Inc. v. Va. Sur. Co., 750 F. Supp. 2d 316, 325–27 (D. Mass. 2010) (holding that request for declaratory judgment on insurance indemnification survived a Rule 12(b)(6) motion because the plaintiff had carefully pleaded the particulars of the insurance agreement and the incident that potentially triggered coverage).

Defendants have been unable to show why the declaratory judgment requests regarding whether the Bank can foreclose on the Property even though Donna did not sign the Mortgage and Gerard could not have signed on her behalf must be dismissed at this stage. The core of Defendants' argument is that "Plaintiffs have admitted by Mr. Penney's signature on behalf of Ms. Penney pursuant to the POA—which Mr. Penney himself referenced in the signature according to the notary—is an admission against Plaintiffs that Mr. Penney in fact had the authority to execute the Mortgage on Ms. Penney's behalf." [ECF No. 27 at 6–7]. Defendants do not cite any case law to suggest that a claim involving a facially valid mortgage can be dismissed where the Plaintiffs now dispute the validity of that Mortgage. The only case Defendants cite in this section is Davis v. Meenan, 169 N.E. 145, 145 (Mass. 1930), which suggests that whether an execution was valid involves questions of fact that cannot be resolved at the motion to dismiss stage. Moreover, it is unclear why Gerard's signature on the Mortgage would be an admission against Donna. The parties have not submitted any durable power of attorney and the Court must view the well-pleaded facts in Plaintiffs' favor at this stage. Furthermore, Defendants have failed to cite authority for the proposition that, under Massachusetts law, if Gerard were not empowered to sign the Mortgage at issue on Donna's behalf, the Mortgage would nonetheless be enforceable against Donna in this case.

Citing Mass. Gen. Laws ch. 184, § 24, Defendants also argue in summary fashion that any defect in the Mortgage was automatically cured after ten years. Section 24 provides:

> When any owner of land the title to which is not registered, or of any interest in such land, signs an instrument in writing conveying or purporting to convey his land or interest, or in any manner affecting or purporting to affect his title thereto, and the instrument, whether or not entitled to record, is recorded, and indexed, in the registry of deeds for the district wherein such land is situated, and a period of ten years elapses after the instrument is accepted for record, and the instrument or the record thereof because of defect, irregularity or omission fails to comply in any respect with any requirement of law relating to seals, corporate or individual, to the validity of acknowledgment, to certificate of acknowledgment, witnesses, attestation, proof of execution, or time of execution, to recitals of consideration, residence, address, or date, to the authority of a person signing for a corporation who purports to be the president or treasurer or a principal officer of the corporation, such instrument and the record thereof shall notwithstanding any or all of such defects, irregularities and omissions, be effective for all purposes to the same extent as though the instrument and the record thereof had originally not been subject to the defect, irregularity or omission, unless within said period of ten years a proceeding is commenced on account of the defect, irregularity or omission, and notice thereof is duly recorded in said registry of deeds and indexed and noted on the margin thereof under the name of the signer of the instrument and, in the event of such proceeding, unless relief is thereby in due course granted.

Section 24 has been described as a "statute of repose" because "[t]he ten-year period stated in § 24 simply allows those individuals whose rights have been affected by the purported conveyance to commence a proceeding to vindicate their rights, but once ten years have elapsed, the rights of those parties to challenge the validity of the conveyance are lost." Bank of Am., N.A. v. Casey, 52 N.E.3d 1030, 1038 (Mass. 2016). Plaintiffs are now challenging the Bank's ability to foreclose on the Property because the Mortgage, viewing all well-pleaded facts in Plaintiffs' favor, was not signed by Donna and Gerard did not have the authority to sign on her behalf. Section 24 appears to apply to an owner of property who "signs an instrument in writing conveying or purporting to convey his land or interest." Mass. Gen. Laws ch. 184, § 24. Here, however, Plaintiffs claim that Donna never signed the Mortgage, and thus Defendants' mere

citation to Section 24, without more, does not establish that the problem alleged with the

Mortgage qualifies as a defect that is automatically cured under chapter 184, § 24. Accordingly,

Defendants have failed to show that dismissal of the declaratory judgment requests related to the

enforceability of the Mortgage against Donna is appropriate at this stage.

The remaining declaratory judgment requests in Count I, however, must be dismissed

because they are insufficiently pleaded.[7] The Plaintiffs make numerous requests for declaratory

judgment that duplicate their other causes of action, which the Court has already dismissed under

Rule 12(b)(6), and seem distinct from the requests involving Donna. The requests in paragraphs

34 and 40 are duplicative of Count VII, which requests "recoupment and adjustment of the loan

Pursuant to G.L. 140D." Complaint at 13. The requests in paragraphs 35 and 36, involving

Gerard's rights under certain agreements, seem to duplicate the breach of contract claims. The

request in paragraph 38 vaguely alludes to "all foreclosure laws, rules and regulations," which

cannot, as explained above, satisfy Rule 8(a)(2). Similarly, the request in paragraph 39 must be

dismissed because it generally states, without more, "that there exist clear violations of the

required disclosure laws, rules and regulations," which would affect the mortgage's validity.

Accordingly, the declaratory judgment requests regarding the enforceability of the Mortgage

against Donna remain, but the remainder are dismissed.

### j.   The Plaintiffs' Request for a Preliminary Injunction

At the end of the Complaint, in the prayer for relief, the Plaintiffs request a preliminary

injunction to stop the foreclosure of the Property. Complaint at ¶ 83(i). Courts may consider an

---

[7] Plaintiffs have included numerous requests for declaratory judgment within single paragraphs, making it challenging to isolate each request. From the Court's reading of the Complaint, the surviving declaratory judgment requests are contained in in paragraphs 32–33, 37, and the last sentence of 40.

application for a preliminary injunction even if it is in the body of the complaint. See, e.g., Cuevas v. DiPaulo, No. 11-cv-10869-WGY, 2011 WL 2118268, at *6 (D. Mass. May 23, 2011) (considering and denying a request for a temporary restraining order in the body of a complaint); Duclerc v. Bender, No. 10-cv-12050-DPW, 2010 WL 5283292, at *2 (D. Mass. Dec. 16, 2010) (same, with a request for either a temporary restraining order or a preliminary injunction); Haverstick v. Gerry, No. 15-cv-94-JD, 2015 WL 1457950, at *2 (D.N.H. Mar. 30, 2015) (granting defendant time to respond to request for preliminary injunction made in the complaint).

In order for a plaintiff to secure a preliminary injunction, he or she must show all of the following: "[1] that he [or she] is likely to succeed on the merits, [2] that he [or she] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his [or her] favor, and [4] that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). In this analysis, the most important factor is the likelihood of success on the merits. Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 10 (1st Cir. 2013). The Plaintiffs do not argue that they have met the standard for issuing preliminary injunctions. Further, at this stage, it does not appear likely that Plaintiffs will succeed on the merits. Accordingly, the request for a preliminary injunction is denied.

**IV. CONCLUSION**

For the reasons discussed above, the Defendants' motion to strike [ECF No. 33] is

GRANTED in part and DENIED in part. Further, Defendants' motion to dismiss [ECF No. 26] is

GRANTED in part and DENIED in part. It is denied with respect to the requests for declaratory

judgment regarding Donna in Count I, but granted with respect to the remaining requests in

Count I, and Counts II through VIII. Finally, the Plaintiffs' request for a preliminary injunction

in the prayer for relief in the Complaint is DENIED.

**SO ORDERED.**

March 15, 2017                                    /s/ Allison D. Burroughs
                                                 ALLISON D. BURROUGHS
                                                 U.S. DISTRICT JUDGE