UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GERARD M. PENNEY and<br>DONNA PENNEY, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 16-cv-10482-ADB |
| DEUTSCHE BANK NATIONAL TRUST<br>COMPANY, et al., | * * * * | |
| Defendants. | * * | |

### MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

BURROUGHS, D.J.

Plaintiffs Gerard M. Penney and Donna Penney initiated this lawsuit against Deutsche Bank National Trust Company as trustee of the Soundview Home Loan Trust 2005-OPT3 ("Deutsche Bank") and Ocwen Loan Servicing, LLC ("Ocwen") to stop a foreclosure on their home. On March 15, 2017, the Court dismissed all of the Plaintiffs' claims in the Amended Complaint [ECF No. 21], except for the request in Count I for a declaratory judgment that the mortgage at issue is unenforceable against Donna and therefore a foreclosure cannot proceed. [ECF No. 39]. Deutsche Bank then filed counterclaims for fraud (Count I against Gerard), negligent misrepresentation (Count II against Donna), equitable subrogation (Count III against the Plaintiffs), and declaratory judgment (Count IV against the Plaintiffs). [ECF No. 55].

Currently pending before the Court are Ocwen's motion for summary judgment on Count I of the Amended Complaint [ECF No. 57], and Deutsche Bank's motion for partial summary judgment on Counts III and IV of the counterclaims [ECF No. 60].[1] For the reasons stated below,

---

[1] Deutsche Bank also joins Ocwen's motion for summary judgment. [ECF Nos. 63, 64].

Ocwen's motion is DENIED and Deutsche Bank's motion is GRANTED in part and DENIED in part.

I.  BACKGROUND

The undisputed facts are as follows. On March 27, 1997, Plaintiffs, who are married, acquired title as tenants in the entirety to 34 Anchor Drive, Sandwich, Massachusetts (the "Property"). [ECF No. 59 ¶ 1] ("Ocwen Facts"); [ECF No. 62 ¶ 1] ("Deutsche Bank Facts"); [ECF No. 62-1]. As relevant to this case, on or about September 15, 2004, Plaintiffs granted a mortgage (the "Ameriquest Mortgage") on the Property to Ameriquest Mortgage Company ("Ameriquest") to secure a loan of $315,000. Deutsche Bank Facts ¶ 2. The Ameriquest Mortgage bears Gerard and Donna's notarized signatures as the borrowers. Id. On or about July 25, 2005, Gerard executed a promissory note (the "H&R Note") in the principal amount of $405,000 in exchange for a mortgage (the "H&R Mortgage") on the Property from H&R Block Mortgage Corporation ("H&R Block"). Ocwen Facts ¶¶ 6–7; Deutsche Bank Facts ¶ 3. $334,805.63 of the proceeds from the H&R Mortgage loan were paid to Ameriquest to satisfy the Ameriquest Mortgage, which was then discharged. Deutsche Bank Facts ¶ 5. On October 21, 2005, H&R Block assigned the H&R Mortgage to Option One Mortgage Corporation ("Option One"). Id. ¶ 10. On or about August 1, 2006, Option One assigned the H&R Mortgage to Deutsche Bank. Id. ¶ 11. H&R Block endorsed the H&R Note to Option One, who endorsed it to Deutsche Bank. Id. ¶ 12. Deutsche Bank is the holder of the H&R Note and the H&R Mortgage, and Ocwen is the servicer of the H&R Mortgage. Id. ¶ 13–14.

Although it is undisputed that Gerard alone signed the H&R Note, a core factual dispute concerns whether Gerard individually, or the Plaintiffs collectively, executed the H&R Mortgage. The H&R Mortgage identifies Gerard and Donna as the "Borrower." [ECF No. 59-4

2

at 2]. Each page of the H&R Mortgage is initialed "GmP" and "DP." Id. at 2−11. The signature pages of the mortgage and of an attached adjustable rate rider contain Gerard's signature on his own behalf, and also contain his signature "for Donna Penney under [Power of Attorney] dated 3/20/03." Id. at 7, 11.[2] The H&R Mortgage was also acknowledged by a notary public who states on the signature page:

> On this 25th day of July, before me, the undersigned notary public, personally appeared Gerard M. Penney [and] Donna Penney (under [Power of Attorney]) proved to me through satisfactory evidence of identification, which was/were [Massachusetts Driver's License] to be the person(s) whose name(s) is signed on the preceding document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

Id. at 7. As discussed in more detail below, the parties disagree as to whether the Power of Attorney dated March 20, 2003 ("2003 POA") existed and whether it authorized Gerard to execute the H&R Mortgage on Donna's behalf. The 2003 POA itself has not been produced in discovery or otherwise located.

## II. LEGAL STANDARD

Summary judgment is appropriate "only if, after appraising all of the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences to [his or] her behoof, the record discloses no genuine issue of material fact and indicates that the movant is entitled to judgment as a matter of law." Potvin v. Speedway LLC, 891 F.3d 410, 413 (1st Cir. 2018); see Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003)

---

[2] In 1999, Donna began experiencing dizziness and weakness; her doctors initially believed the cause to be multiple sclerosis but later diagnosed her with Lyme Disease. Ocwen Facts ¶ 4. Donna's medical condition deteriorated over time and she has been non-communicative since 2003. Id. ¶ 5. On November 8, 2017, Donna appeared for her deposition in this matter, and her counsel stated on the record that she does not have the ability to effectively communicate or respond to questions in a deposition. Ocwen Facts ¶ 12; [ECF No. 59-7].

3

(citation omitted). "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial." Ocasio-Hernandez v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. at 4–5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Once the movant takes the position that the record fails to make out any trial-worthy question of material fact, "it is the burden of the nonmoving party to proffer facts sufficient to rebut the movant's assertions." Nansamba v. N. Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013) (citation omitted).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In reviewing the record, however, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted this standard "is favorable to the nonmoving party, but it does not give him [or her] a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which [he or she] relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6

4

(quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Medina-Munoz, 896 F.2d at 8 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)). At summary judgment, "'the judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Burns v. Johnson, 829 F.3d 1, 8 (1st Cir. 2016) (alteration in original) (quoting Anderson, 477 U.S. at 249).

### III. OCWEN'S MOTION FOR SUMMARY JUDGMENT

Following the Court's issuance of the Memorandum and Order on March 15, 2017 [ECF No. 39], only Count I of the Amended Complaint remains pending, to the extent that it seeks a declaratory judgment that Gerard, but not Donna, is obligated on the H&R Mortgage. "An action for declaratory judgment 'enable[s] litigants to clarify legal rights and obligations before acting upon them.'" Riva v. Ashland, Inc., No. 09-cv-12074-DJC, 2013 WL 1222393, at *7 (D. Mass. Mar. 26, 2013), on reconsideration in part sub nom. Savini v. Ashland, Inc., No. 11-cv-12277-DJC, 2013 WL 5218194 (D. Mass. Sept. 16, 2013) (quoting Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995)). Under the Declaratory Judgment Act, "[i]n a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Judgment is appropriate where 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Riva, 2013 WL 1222393, at *7 (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). The Court has "substantial discretion in deciding whether to declare the rights of

litigants." MedImmune, Inc., 549 U.S. at 136; see also El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 493 (1st Cir. 1992) ("[D]eclaratory relief, both by its very nature and under the plain language of 28 U.S.C. § 2201, is discretionary.").

### A. Power of Attorney[3]

Although the 2003 POA itself has not been located, Ocwen asserts that summary judgment is appropriate on Count I because Gerard's deposition testimony, and the face of the H&R Mortgage agreement and other documents that Gerard executed on Donna's behalf, establish that there is no genuine dispute that he signed the H&R Mortgage as an individual and as Donna's agent pursuant to a valid power of attorney.

First, Ocwen relies on the notary public's certificate of acknowledgment in the H&R Mortgage as proof that the H&R Mortgage was properly executed by both Gerard and Donna. "The identity of [a party] as the person who appeared before the notary public is established by the statement in the record [in this case] that," Davis v. Meenan, 169 N.E. 145, 145 (Mass. 1930):

> "On this [day], before me, the undersigned notary public, personally appeared [Plaintiff] proved to me through satisfactory evidence of identification, which was M[assachusetts] D[river's] L[icense], to be the person(s) whose name(s) is signed

---

[3] As an initial matter, the motion shall not be denied based on Ocwen's alleged violation of Local Rule 7.1(a)(2)'s meet and confer requirement, or its failure to comply with the Scheduling Order's direction that "Parties shall inform the Court no later than December 22, 2017 whether there will be dispositive motions filed." [ECF No. 48]. While "a litigant's failure to observe the Local Rules invites sanctions, omitting to confer prior to filing a motion certain to be opposed does not warrant so severe a sanction as summary denial." Converse Inc. v. Reebok Int'l Ltd., 328 F. Supp. 2d 166, 174 n. 7 (D. Mass. 2004) (quoting Gerakaris v. Champagne, 913 F. Supp. 646, 651 (D. Mass. 1996)). Here, it appears that Ocwen conferred with Plaintiffs prior to filing its motion and merely failed to certify its compliance with the Local Rules. Further, given that Deutsche Bank informed the Court and Plaintiffs of its intent to file a summary judgment motion, and Plaintiff's counsel was aware that Ocwen anticipated moving for summary judgment, Plaintiff has not been so prejudiced as to warrant the denial of summary judgment or the issuance of sanctions on such grounds.

6

on the preceding document, and acknowledged to me that he signed it voluntarily for its stated purpose."

Edgeston v. Ameriquest Mortg. Co., 14 N.E.3d 968, 2014 WL 4251155, at *2 (Mass. App. Ct. Aug. 29, 2014) (alterations in original). Absent "any countervailing materials from the plaintiff," this certificate of acknowledgment may be "sufficient to satisfy the [moving party's] burden on summary judgment" as to the identity of the signatory. Id. The "signatory's denial alone is [generally not] sufficient to overcome the presumption created by notarization." Id. (citing Keville v. McKeever, 675 N.E.2d 417, 430 (Mass. App. Ct. 1997)).

Here, the notary public acknowledged on the H&R Mortgage that Gerard and Donna (under power of attorney) proved through a Massachusetts Driver's License to be the "person(s) whose name(s) is signed on the [H&R Mortgage]." [ECF No. 59-4 at 7]. Defendants, however, provide no basis for the Court to rely on the certificate to not only establish Gerard's identity as the person that physically appeared before the notary public, but also to find that Gerard had authority to appear on Donna's behalf. The certificate on the H&R Mortgage states that a Massachusetts Driver's License was provided as satisfactory evidence of identification; there is no suggestion that Gerard presented the 2003 POA for the notary public's consideration, nor is it evident that a driver's license alone should suffice as evidence of Gerard's authority to act as Donna's agent. For the purposes of summary judgment, this certificate of acknowledgment establishes that Gerard appeared and executed the H&R Mortgage before the notary public, but is insufficient to prove that Gerard properly acted as his wife's authorized representative.

Ocwen next argues that Gerard's deposition testimony and certain documents that Gerard purportedly executed on Donna's behalf prove the existence of the 2003 POA. First, the H&R Mortgage identifies Gerard and Donna as the "Borrower," shows that each page is initialed "GmP" and "DP," and contains Gerard's signature for himself, as well as his separate signature

7

"for Donna Penney under [Power of Attorney] dated 3/20/03." [ECF No. 59-4 at 2−11]. In July 2005, Gerard also executed a Department of Housing and Urban Development Settlement Statement concerning the Property by signing his name and Donna's name "under [Power of Attorney] dated 3/20/03." [ECF No. 62-5]; Bank Facts ¶ 5. In June 2016, Gerard signed a declaration of homestead for the Property on behalf of Donna, which plainly states therein:

> I, Donna M. Penney, do hereby acknowledge under pains of perjury that I am currently disabled and require my husband, Gerard M. Penney, to execute this document as my true and lawful attorney in fact and pursuant to a "Durable Power of Attorney", executed by me previously as my condition prevents me from having the ability to sign documents at this time.

[ECF No. 59-6 at 2].[4] At his deposition, Gerard testified that he signed this homestead declaration pursuant to the "original" power of attorney dated "03/20 of '03." [ECF No. 59-2 at 95:24] ("Gerard Depo"). When asked, "So it's your testimony that [with regard to the homestead declaration], you signed that through a power of attorney that was dated 2003; is that correct?" Gerard responded, "The original 2003, yes. 3/20 of 2003." Gerard Depo 96:5-11.

Gerard's testimony, however, was not consistent with regard to whether the 2003 POA existed and empowered him to execute the H&R Mortgage on Donna's behalf. Gerard states by affidavit:

> I am unsure what the power of attorney dated March 20, 2003 actually gave me power to do and I would like to read it to see what powers it gave me. I really didn't want to sign for my wife and signed the [H&R Note] for myself only and I want to pay the loan back at some point. I have never even seen a power of attorney dated March 20, 2003 and I don't think it even exists at all. It is my belief that my wife never signed a power of attorney dated March 20, 2003 that would have gave me the power to sign for her and if she actually did I would like to see it and read what it actually says.

---

[4] The notary public additionally acknowledged specifically that "Donna Penney also appeared and proved to me through Massachusetts Driver's License to be her and acknowledged that she requested that Gerard M. Penney sign this document on her behalf." [ECF No. 59-6].

8

[ECF No. 67-2 ¶ 7]. In response to other deposition questions, Gerard did not concede that the 2003 POA existed, but rather acknowledged that documents existed that apparently referenced the 2003 POA:

> Q. So it's your testimony that there was a power of attorney executed on 3/20/03; is that correct?
> A. Yes, it's on the paper.
> Q. I'll direct your attention to . . . the Complaint. In Paragraph 7 of that Complaint, it states, it is a fact that there is no power of attorney dated 3/20/03 as stated in the [H&R Mortgage] and there exists no power of attorney dated 3/20/03 at all. Do you see that statement?
> A. I see that statement.
> Q. Is that true?
> A. I don't know if that's true or not.
> Q. Okay. So you just testified a moment ago that you signed [the homestead declaration] on behalf of your wife based upon a power of attorney from 3/20/03; is that correct? Do you recall that?
> A. I don't – Well, like I said, it's written down. I don't recall it, but it's written down. It's in black and white.

Gerard Depo 96:5-97:4. When asked about how he came to execute the homestead declaration in June 2016 on behalf of Donna, Gerard said, "I had power of attorney," but further explained that he did not know when that power of attorney became effective. Gerard Depo 98:22-99:2; 102:21-103:1.

Taken in the light most favorable to the Plaintiffs, particularly Donna, the record presents a genuine dispute of material fact as to whether Gerard properly executed the H&R Mortgage on his wife's behalf. The Court does not weigh the credibility of Gerard's testimony at summary judgment. See N. Ins. Co. of N.Y. v. AGA Food Serv. Inc., No. 08-11089-MBB, 2011 WL 761507, at *4 (D. Mass. Feb. 24, 2011) ("To allow summary judgment this court would have would to weigh the credibility of the respective deponents and other evidence and to balance the strengths of the parties' proofs to arrive at a factual conclusion. Summary judgment is not the proper vehicle for that kind of a determination on a material fact."). The face of the H&R

Mortgage and other documents, as well as portions of his deposition testimony, certainly suggest that Gerard executed such documents on Donna's behalf pursuant to the 2003 POA. Portions of Gerard's deposition testimony and affidavit, however, indicate that the 2003 POA may not exist, or might not have authorized him to execute mortgages. See, e.g., [ECF No. 67-2] (Gerard attesting that he is "unsure what the [2003 POA] actually gave [him] power to do."). Given Gerard's deposition testimony and affidavit, coupled with the lack of documentary proof of the 2003 POA itself, the Court cannot determine that there is no genuine dispute of material fact as to whether (1) the 2003 POA existed at the time that the H&R Mortgage was executed and (2) the 2003 POA authorized Gerard to execute the H&R Mortgage on Donna's behalf. Accordingly, summary judgment is denied and Count I shall proceed to trial.[5]

### B. Ocwen as Loan Servicer

Ocwen contends that even assuming, *arguendo*, that there is a genuine dispute as to whether Deutsche Bank has authority to foreclose upon the Property, summary judgment is appropriate on Count I as to Ocwen, because, as the loan servicer, Ocwen was not involved in

---

[5] Although it appears that whether Donna signed the H&R Note is not relevant to whether Deutsche Bank may foreclose if she validly executed the H&R Mortgage, the parties have not briefed this issue with sufficient supporting authority for their respective positions. See Perry v. Miller, 112 N.E.2d 805, 806 (Mass. 1953) ("A mortgage, however, may exist without there being any debt or any personal liability of the mortgagor."); Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs., 946 N.E.2d 665, 674 n.10 (Mass. 2011) (in a mortgage refinancing, "the mortgage splits the title to the property into two parts—the legal title, which is owned by the lender (the mortgagee), and the equitable title, which remains with the borrower (mortgagor)"); see also In re Smith-Pena, 484 B.R. 512, 524 (Bankr. D. Mass. 2013) ("When the Debtor signed the Mortgage [but did not sign the Note], she gave [mortgagee] security on the obligations contained in the Note and Mortgage, but the responsibility for performing those obligations rested with her husband, the sole signatory on the Note."). The parties may address the relevance of Gerard's sole execution of the H&R Note to Deutsche Bank's ability to foreclose in a pretrial motion or at trial.

10

the origination of the H&R Mortgage and is not the owner of the H&R Mortgage. [ECF No. 58 at 11].

Loan servicers generally hold "'no beneficial ownership interest in the mortgage, or in the debt secured thereby; instead, [their] role [is] strictly as servicing agent' for the mortgagee and the note holder." McCusker v. Ocwen Loan Servs., LLC, No. 14-13663-MGM, 2015 WL 4529986, at *6 (D. Mass. July 27, 2015) (quoting Haskins v. Deutsche Bank Nat. Trust Co., 19 N.E.3d 455, 459 n.10 (Mass. App. Ct. 2014)); cf. Chanthavong v. John Doe Corp., No. 10-211 S., 2012 WL 6840496, at *3 (D.R.I. Nov. 19, 2012) ("[T]he mortgage agreement on its face demonstrates that [servicer defendant] was not a party and was not obligated by . . . the terms of the mortgage agreement . . . ."). Ocwen may, however, have rights and obligations that are relevant under Count I to the extent that Ocwen "acts on behalf of the owner of the debt." Kiah v. Aurora Loan Servs., LLC, No. 10-40161-FDS, 2011 WL 841282, at *5 (D. Mass. Mar. 4, 2011) ("As the servicer, Aurora has the right to foreclose on the mortgage on Fannie Mae's behalf. . . . Therefore, Aurora, as Fannie Mae's agent, has the right both to collect on the debt and to foreclose on the mortgage.").

Here, it is undisputed that Deutsche Bank is the holder of the H&R Mortgage and H&R Note; Ocwen's rights with respect to the H&R Mortgage are likely solely derivative of Deutsche Bank's standing as the mortgage and note holder. Ocwen's motion, though, is not supported by any evidence detailing the nature of its servicing relationship with Deutsche Bank with regard to the H&R Mortgage. The statement of material facts accompanying Ocwen's motion contains no information about its servicing role. Ocwen provides no legal authority or support in the record for its assertion that its lack of involvement in the origination of the H&R Mortgage necessarily means that it has no rights or obligations that may be subject to a declaratory judgment under

11

Count I. The general principle that loan servicers typically have limited rights under a mortgage or servicing agreement is not an adequate basis for the Court to conclude that Ocwen has no rights or obligations concerning a foreclosure on the Property and that Plaintiffs will not be prejudiced by dismissing Ocwen from the case at this stage. In the absence of a more developed record, summary judgment is denied.

**IV.     DEUTSCHE BANK'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Assuming that Donna is not obligated on the H&R Mortgage, Deutsche Bank asserts in Counts III and IV of the counterclaims that the H&R Mortgage should be equitably subrogated to the record position of the Ameriquest Mortgage, because Plaintiffs' obligations under the Ameriquest Mortgage were satisfied using the proceeds of the H&R Mortgage loan. Equitable subrogation is a "broad equitable remedy" and "an exception to the basic principle that determines priority among mortgages, 'first in time is first in right.'" E. Bos. Sav. Bank v. Ogan, 701 N.E.2d 327, 329, 330 (Mass. 1998) (citation omitted). Under this doctrine:

> [o]ne who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.

E. Bos. Sav. Bank, 701 N.E.2d at 330 (quoting Restatement (Third) of Property (Mortgages) § 7.6(a) (1997)). "In other words, the new mortgage held by a mortgagor, who used the proceeds of the new mortgage to extinguish an earlier mortgage, may receive the same priority once given to the earlier mortgage." Id.; see McCabe v. Braunstein, 439 B.R. 1, 6 (Bankr. D. Mass. 2010) ("Equitable subrogation occurs where one party, by virtue of its payment of another's obligation, steps into the shoes of the party who was owed the obligation for purposes of getting recompense

12

for its payment." (quoting In re N. Am. Rubber Thread Co., 333 B.R. 164, 168 (Bankr. D. Mass. 2005))).

In evaluating whether equitable subrogation applies, the Court must consider whether "(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder." E. Bos. Sav. Bank, 701 N.E.2d at 330 (quoting Mort v. United States, 86 F.3d 890, 894 (9th Cir. 1996)). The doctrine is guided by "principles of equity" and "may apply even where one or more of these factors is absent." Id.; Wells Fargo Bank, N.A. v. Comeau, 87 N.E.3d 577, 580 (Mass. App. Ct. 2017), review denied, 478 Mass. 1110 (2018). In balancing the equities, the Court "must ensure that the intervening mortgagee is not unjustly enriched by succeeding to first priority, but it also must ensure that the intervening mortgagee does not receive a lower priority as a result of the subrogee's mistake." E. Bos. Sav. Bank, 701 N.E.2d at 330.

Here, factors one through four from East Boston Savings Bank plainly support subrogation. First, the H&R Mortgage loan proceeds were used to satisfy and discharge the Ameriquest Mortgage in order to prioritize the H&R Mortgage. Deutsche Bank Nat'l Tr. Co. v. United States, No. 12-11038-NMG, 2014 WL 12573990, at *4 (D. Mass. Jan. 28, 2014), report and recommendation adopted sub nom. Deutsche Bank Nat'l Tr. Co. v. United States, No. 12-11038-NMG, 2014 WL 972132 (D. Mass. Mar. 12, 2014) (first factor favored subrogation where "[p]laintiff clearly intended for the second mortgage to be in first lien position and have priority over all other liens against the property," and "[h]ad the payment not been made, plaintiff would have been junior to the prior . . . mortgage . . . ."). Second, "[a] party acts as a volunteer, . . . if,

13

in making a payment, it has no interest to protect or acts without any obligation to or request from the party liable on the original obligation." Deutsche Bank Nat'l Trust Co., 2014 WL 972132, at *1. Here, Gerard admits that he requested that the H&R Mortgage loan proceeds be used to pay off the Ameriquest Mortgage debt, and in doing so, the Bank protected its interest by positioning itself as the first-priority lienholder. [ECF No. 67 at 13]; see Deutsche Bank Nat'l Tr. Co., 2014 WL 12573990, at *4 (bank "was not acting as a volunteer when it made the payment because it was furthering its own interest in having the prior . . . mortgage . . . paid off in order to obtain first lien position"). Third, Plaintiffs, not Deutsche Bank, were liable under the Ameriquest Mortgage. [ECF No. 62 ¶ 2]. Fourth, $334,805.63 of the H&R Mortgage loan satisfied the entirety of the Ameriquest Mortgage debt. [ECF No. 62 ¶ 5].

The remaining issue is whether subrogation will work an injustice to the rights of Donna. See E. Bos. Sav. Bank, 701 N.E.2d at 334 ("[S]ubrogation will not apply to the extent it prejudices the intervening mortgagee."); Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein, 619 So.2d 267, 270 (Fla. 1993) (subrogation is appropriate where equity owner "stands in no worse position than she stood before the execution of the [subrogated] mortgage"). First, to avoid prejudice to an equity owner or junior lienholder, the mortgagee is subrogated "only to the extent that the funds disbursed are actually applied toward the payment of the prior lien. There is no right of subrogation with respect to any excess funds." E. Bos. Sav. Bank, 701 N.E.2d at 334–35 (quoting Restatement (Third) of Property (Mortgages) § 7.6 comment e, at 520 (1997)); see Bank of Am., N.A. v. Diamond Fin., LLC, 42 N.E.3d 1151, 1157–58 (Mass. App. Ct. 2015) (Bank of America appropriately "was not equitably subrogated for the full value of the loan it acquired. Instead, only the portion of the . . . loan proceeds that were used to pay off the [prior] mortgage were moved to the first position."); see also Palm Beach Sav. & Loan Ass'n, 619 So.2d at 271

14

(although defendant "is not entitled to a . . . windfall" for the loan proceeds used to satisfy prior debts, bank cannot claim against the property for loan proceeds not used to benefit the property). By limiting the subrogation to the amount of the H&R Mortgage loan proceeds that were used to discharge the Ameriquest Mortgage, Deutsche Bank is not "unjustly enriched by succeeding to first priority," nor is Donna "placed in a position of lower priority." Bank of Am., N.A., 42 N.E.3d at 1158.

Moreover, although Donna was allegedly unaware of Gerard's wrongful or mistaken conduct in signing the H&R Mortgage on her behalf without any power of attorney, Donna will receive a windfall in the absence of subrogation, because the H&R Mortgage loan proceeds that she obtained nonetheless satisfied her obligation on the Ameriquest Mortgage. See Option One Mortg. Corp. v. Oakhem, 889 N.E.2d 78, 2014 WL 2491910, at *1 (Mass. App. Ct. June 24, 2008) (joint tenant, whose deceased husband solely granted second mortgage to subrogee, was not prejudiced by subrogation because "[h]ad there been no [second mortgage] at the time of [her husband's] death, the old mortgage covering the entire property would have remained in place").

In Hare v. LPP Mort. Ltd., 30 Mass. L. Rptr. 651, 2013 WL 951152, at *1 (Mass. Super. Ct. Mar. 8, 2013), defendants Robert Hare and Rita Tobias granted mortgages on the property that they co-owned together. Id. Tobias later executed subsequent mortgages by forging Hare's signature without his knowledge and used the proceeds from those mortgage loans to satisfy prior mortgage debts. Id. at *2. When the last mortgage went into default, Hare filed an action to prevent the defendant from foreclosing on his equity interest in the property. Id. at 1. The court applied equitable subrogation, explaining that "Hare was unjustly enriched when [the subsequent mortgagee] paid off the [prior] mortgages [and] . . . continued to be unjustly enriched as each subsequent mortgagee paid off the previous mortgage." Id. at *4. That Hare did not know about

15

Tobias' forgeries did not exempt him from equitable subrogation and likewise does not insulate Donna's interest in the Property. See Shchekina v. Wash. Mut. Bank, No. 08 C 6094, 2012 WL 3245957, at *4 (N.D. Ill. Aug. 7, 2012) (equitable subrogation appropriate where "[plaintiff] concedes that she executed the [prior] note and mortgage, and thus she was liable to [the prior mortgagee]," and "[e]ven though her signature was allegedly forged on the [subsequent mortgage] documents, the execution of those documents extinguished her liability"); Chase v. Ameriquest Mortg. Co., 921 A.2d 369, 377 (N.H. 2007) (applying equitable subrogation where plaintiff's former husband executed a second mortgage by forging the plaintiff wife's name); Palm Beach Savs. & Loan Ass'n, 619 So.2d at 270–71 (applying equitable subrogation against wife's homestead interest after former husband forged her signature to take out a loan to pay off three existing mortgages); see also Crawford v. Silette, 608 F.3d 275, 280−81 (5th Cir. 2010) (holding in related context of imposing equitable liens, where husband fraudulently obtained refinancing on his and his wife's property by forging his wife's signature, "a party's innocence in the fraud is not relevant to whether the court can impose an equitable lien," and "[t]he only relevant factor is whether the party is unjustly enriched by fraudulently obtained funds").

In an analogous case allowing equitable subrogation, defendants Nancy and Peter Needel owned property as tenants by the entirety and together granted a mortgage on the property, as Gerard and Donna both granted the Ameriquest Mortgage. See Select Portfolio Servicing, Inc. ex rel. U.S. Bank Nat. Ass'n v. Needel, No. 07 MISC 349527 (RBF), 2012 WL 760583, at *2 (Mass. Land Ct. Mar. 7, 2012), aff'd in part, vacated in part on other grounds Select Portfolio Servicing, Inc. v. Needel, 987 N.E.2d 617 (Mass. App. Ct. 2013). A year later, Nancy Needel (like Gerard) solely executed a second mortgage on the entire property, and the loan proceeds were used to satisfy and discharge the prior mortgage. Id. After the second mortgage went into

default, the Needels prevented the loan servicer from foreclosing on the property based on Peter Needel's missing signature from the second mortgage agreement, as Plaintiffs here attempt to rely on Donna's unauthorized signature on the H&R Mortgage. See Select Portfolio Servicing, Inc. v. Needel, No. 349527 (CWT), 2009 WL 1089438, at *5 (Mass. Land Ct. Apr. 22, 2009). In holding that equitable subrogation was appropriate, the Needel court determined that the interests of junior lienholders were not prejudiced because "[u]pon the discharge of the [first mortgage], the [second mortgage] became the only mortgage on the property," and "the [second] mortgage was, and continues to be, the sole mortgage on the property." Id. at *6. Further, "[b]y relying on a defect in the [second] [m]ortgage agreement to both avoid making payments and prevent [Select Portfolio Servicing] from foreclosing, the Needels . . . avoided their mortgage obligations without consequence and [were] unjustly enriched." Id. at *5.

Here, it is undisputed that Gerard and Donna both executed the Ameriquest Mortgage. Gerard also acknowledged in his deposition that he executed the H&R Mortgage to pay prior mortgage bills, and that the proceeds of the H&R Mortgage loan satisfied the Ameriquest Mortgage debt. Gerard Depo 49:17-50:7; 55:8-17. Therefore, equitable subrogation up to the amount of the loan proceeds used to satisfy the Ameriquest Mortgage will not prejudice Donna, but rather place her in the same position as she stood before the H&R Mortgage was executed.

To contest the application of equitable subrogation, Plaintiffs rely on two cases: Coraccio v. Lowell Five Cents Sav. Bank, 612 N.E.2d 650 (Mass. 1993) and Wells Fargo Bank, N.A. v. Comeau, 87 N.E.3d 577 (Mass. App. Ct. 2017). Coraccio held that either spouse holding property as tenants in the entirety may convey or encumber his or her own interest in the property, and a creditor may foreclose on that spouse's interest, subject to the continuing rights of the other spouse. 612 N.E.2d at 655. Unlike this case, however, the court in Coraccio was not

17

presented with a claim for subrogation, an attempt to foreclose on the property, or other equitable grounds for adjusting the priority of interests in the property.

At first glance, Comeau presents similar facts to the instant case. Defendants Nancy and William Comeau owned a residence as tenants in the entirety, which was encumbered by a mortgage to Haverhill Co-Operative Bank. Comeau, 87 N.E.3d at 578–79. Both William and Nancy were grantors of the Haverhill mortgage. Id. William later refinanced the Haverhill mortgage by securing a mortgage in his name from Washington Mutual Bank. Id. at 579. A portion of the Washington Mutual loan proceeds were used to satisfy the Haverhill mortgage. Id. After William died, his interest in the property passed to Nancy. Plaintiff Wells Fargo, the successor-in-interest to Washington Mutual, sought to equitably subrogate to the record position of the Haverhill mortgage so that its mortgage would also encumber Nancy's interest. Id.

Although the Comeau court declined to allow equitable subrogation, that case involved "no facts in the record to support [Wells Fargo's] claim that . . . its predecessor intended to hold a mortgage on the entire property, not subject to Nancy's right of survivorship." Id. at 581. Moreover, Wells Fargo "did not argue . . . that there were any mistakes or errors made in the preparation of the mortgage documents," and there was no evidence that William or Nancy "engaged in any improper or deceptive acts that led to Washington Mutual releasing Nancy's interest in the property and relying solely on William's interest for security." Id. at 582; see also Deutsche Bank Nat'l Tr. Co. for FFMLT Tr. 2005-FF2, Mortg. Pass-Through Certificates, Series 2005-FF2 v. Pike, No. 15-cv-304-JD, 2017 WL 2608727, at *3 (D.N.H. Feb. 12, 2017) (no equitable subrogation where "it is undisputed that no fraud occurred when [plaintiff] obtained the . . . loan and mortgage"). Here, the summary judgment record plainly shows that Gerard represented to Deutsche Bank's predecessor that he executed the H&R Mortgage on his and

Donna's behalf, pursuant to a power of attorney. The H&R Mortgage agreement defines "Borrower" as both Gerard and Donna and covers the entire property. Gerard signed the H&R Mortgage and the attached adjustable rate rider on his behalf and on Donna's behalf purportedly under the 2003 POA. Unlike in Comeau, which also involved property owned by tenants in the entirety, there is substantial and undisputed evidence that Deutsche Bank reasonably did not expect to rely solely on Gerard's interest for security in entering into the H&R Mortgage.

Accordingly, in balancing the equities and the E. Bos. Sav. Bank factors, summary judgment is granted on Counts III and IV of the counterclaims, to the extent that the H&R Mortgage is subrogated up to the amount of the funds used to satisfy the Ameriquest Mortgage.[6]

## V.  CONCLUSION

For the reasons stated herein, Ocwen's motion for summary judgment [ECF No. 57] is DENIED and Deutsche Bank's motion for partial summary judgment [ECF No. 60] is GRANTED in part and DENIED in part.

**SO ORDERED.**

July 31, 2018                                                       /s/ Allison D. Burroughs
                                                                    ALLISON D. BURROUGHS
                                                                    U.S. DISTRICT JUDGE

---

[6] Neither the counterclaims nor Deutsche Bank's summary judgment motion address the effect of Plaintiffs' homestead declaration on the subrogation of the H&R Mortgage if Donna is determined not to be a party to that mortgage. Although it appears that the homestead declaration might not be relevant under the circumstances, the parties may address its significance at trial. See M.G.L. c. 188, § 9 ("A mortgage executed by fewer than all of the owners of a home that is subject to an estate of homestead shall be superior only to the homestead estate of the owners who are parties to the mortgage and their non-titled spouses and minor children, if any.").